AMERICAN MARINE TECH, INC.,

    Plaintiff,

v.

WORLD GROUP YACHTING, INC., *et al*.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Plaintiff's American Marine Tech., Inc's ("American Marine") Motion to Dismiss Counts I and III of Defendants' Counterclaim, ECF No. [42] (the "Motion"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record and applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

    **I.   BACKGROUND**

The Plaintiff, American Marine, is a vessel repair and service facility and parts provider located in Palm Beach County, Florida. ECF No. [1], at ¶ 1. The M/Y ALCHEMIST, is a 1995 105' Mangusta recreational vessel, MMSI 368017950, call sign DJ8591 (the "Vessel"). *Id.* at ¶ 2. Defendant World Group Yachting, Inc. ("World Group") is the owner of the Vessel. *Id.* at ¶ 5.

Plaintiff alleges that in July 2016, Defendant World Group, through its agent and representative, Gary Blonder ("Blonder") on behalf of Yacht Charter Group ("Yachter Charter"), entered into a service agreement (the "Service Agreement") with American Marine to provide materials and services to the Vessel. *Id.* at ¶ 7. The materials and work contemplated by the

Service Agreement included "a total engine repower from Dentz engines to two MTU 2000 V-16 M91 engines, and [the] associated and additional materials and services, including mechanical work [and] electrical work." *Id.* Plaintiff has attached a copy of the Service Agreement to its Complaint, which has been executed by Blonder and Yacht Charter. *See* Exh. A, ECF No. [1-1].

Plaintiff claims that it fully performed the services and materials as agreed upon in the Service Agreement. *Id.* at ¶¶ 10, 14. Plaintiff further alleges that World Group, Blonder, and Yacht Charter have failed to pay its outstanding balance of $55,645.20 for services and materials provided by American Marine, despite repeated demands for payment. *Id.* at ¶¶ at 11-3. Plaintiff claims as a direct and proximate result of this failure to pay, it has incurred and paid significant expenses for salaries and wages, and materials. *Id.* at ¶ 15. Plaintiff has asserted a claim for Enforcement of Lien for Necessaries against the Vessel (Count I); a claim for breach of contract against the Vessel (Count II); and a claim for breach of contract against World Group Yachting (Count III) in its Complaint. *See generally* ECF No. [1].

On July 1, 2019, Defendants World Group and the Vessel (collectively referred to as "Defendants") filed their Amended Answer asserting three counterclaims against the Plaintiff. ECF No. [41] (the "Counterclaim"). The Counterclaim included claims for negligence (Count I); breach of implied warranty of workmanlike performance (Count II); and unjust enrichment (Count III) against the Plaintiff. *Id.*

In the Counterclaim, Defendants allege that the Service Agreement was entered into by American Marine and Yacht Charter to perform certain work related to installing engines onboard the Vessel. *Id.* at 6. Defendants have also attached a copy of the Service Agreement to their Counterclaim. *See* ECF No. [41-1]. Defendants allege that American Marine initially agreed to complete the work promised in the Service Agreement for an estimated $86,020.00. ECF No.

[41], at 6. The Defendants claim that the Service Agreement also contains a provision, which states that the estimate would not "exceed more than 10% of the base amount without a signed authorization." *Id.* The Defendants allege that American Marine agreed that the "Owner's staff [would] perform requested labor which will be subtracted from [the estimated amount]." *Id.*

Defendants claim that once American Marine began performing the work promised in the Service Agreement, there were "numerous problems with the quality of AMT's workmanship." *Id.* Defendants assert that the work was delayed far beyond the 8-10 weeks originally estimated by American Marine. *Id.* at 7. Defendants allege that American Marine was ultimately paid $96,184.38. *Id.* Defendants contend that this amount reflected more than the additional 10% maximum that American Marine could charge without a signed authorization, and that a signed authorization was never executed. *Id.* at 7-8. Therefore, Defendants allege that American Marine has overbilled for the work that was done. *Id.* at 8. Defendants estimate that the amount overbilled is at least $1,561.92 but is potentially "much higher" as they assert that the Plaintiff never credited the work done by the Owner's crew as previously agreed. *Id.*

Plaintiff has now moved to dismiss the Defendants claims for negligence (Count I) and unjust enrichment (Count III) for failure to state a claim upon which relief may be granted. ECF No. [42].

## II.  LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s

pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations."). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Keira v. U.S. Postal Inspection Serv.*, 157 Fed. Appx. 135, 136 (11th Cir. 2005) (internal quotation marks and citation omitted). "A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations and quotations omitted). "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time barred." *Id.* "Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss . . . However, if facts on the face of the pleadings show that the statute of limitations bars the action, the defense can be raised by motion to dismiss." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) (citing Cabral v. City of Miami Beach, 76 So.3d 324, 326 (Fla. 3d DCA 2011).

### III. DISCUSSION

#### a. *Count I – Negligence*

Plaintiff first argues that Defendants' claim for negligence must be dismissed because it is barred by the Economic Loss Rule. ECF No. [42], at 4-7. Specifically, Plaintiff contends that American Marine and World Group are parties to the Service Agreement in contractual privity. *Id.* at 6. Plaintiff acknowledges that the Service Agreement is between the Plaintiff and Yacht Charter. *Id.* at 5. However, Plaintiff argues that Defendants' negligence claim is, nonetheless, barred because Yacht Charter is actually just a registered fictitious name for Defendant World Group. *Id.* at 6. Thus, Plaintiff argues that the negligent conduct alleged is within the scope of the Service

Agreement between the parties. *Id.* Plaintiff claims that the negligence claim is, therefore, "improperly cast as a tort," which is prohibited under the maritime Economic Loss Rule. *Id.*

Defendants respond that the Economic Loss Rule does not apply because their negligence claim does not allege or rely upon a contract executed specifically between Defendant World Group and American Marine. ECF No. [45], at 3. Rather, Defendants contend that the negligence claim alleges that an agreement was entered into between the Plaintiff and Yacht Charter. *Id.* at 4. Further, Defendants argue that the only evidence provided by the Plaintiff that the parties are in contractual privity is a document attached to the Plaintiff's Motion, which is a record found on the Florida Department of State's website (the "Sunbiz Filing"), which evidences that Yacht Charter is a fictitious name registered by World Group. *Id*; *see also* ECF No. [42-1]. Defendants argue that the Court should not rely on the Sunbiz Filing because it is a document outside of the pleadings. ECF No. [45], at 4. Further, the Defendants argue that even if the Court determines it can consider the Sunbiz Filing, the Sunbiz Filing does not support the Plaintiff's argument because the fictitious name was registered by World Group after the Service Agreement was executed. *Id.* Lastly, Defendants argue that the negligence claim should not be dismissed because a party is permitted to plead inconsistent theories of relief. ECF No. [45], at 3. Alternatively, in the event the Court finds that the negligence claim is barred by the Economic Loss Rule, Defendants request leave to amend their counterclaim to include a breach of contract claim. *Id.* at 5.

Although the Florida Supreme Court has limited the application of the Economic Loss Rule to products liability cases, *see Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So.3d 399 (Fla. 2013), no such limitation has been imposed in cases governed by maritime law. Generally, the maritime Economic Loss Rule "provides that a tort action may not lie where the basis for liability arises from a contract." *St. Clair Marine Salvage, Inc. v. M/Y BLUE MARLIN*,

2014 WL 2480587, at *4 (E.D. Mich. June 3, 2014) (*citing E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986)). The Rule finds its origins in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), where the Supreme Court held that a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871. Further, the maritime economic loss doctrine has been expanded to reach situations where a party is attempting to bring a breach of contract action couched as a tort claim. *See BVI Marine Const. Ltd. v. ECS–Florida, LLC*, 2013 WL 6768646, at *3–4 (S.D. Fla. Dec. 20, 2013). The Supreme Court's decision in *E. River S.S. Corp.* indirectly cautioned that claims sounding in tort but stemming from a contractual dispute are often more appropriately remedied pursuant to the contractual relationship. *East River S.S. Corp.*, 476 U.S. at 874 ("Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums."). "[W]hen an enforceable contract exists, it is preferable to resolve disputes on the basis of the contractual relationship." *Id.* at *4. Thus, a breach of contract claim framed as a tort will be prohibited by the maritime Economic Loss Rule.

As an initial matter, the Court disagrees with the Defendants that it may not rely on the Sunbiz Filing because it is outside of the pleadings. A court on its own or by motion may judicially notice "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court properly takes judicial notice of relevant public records in deciding a motion to dismiss, and consideration of such documents does not convert a motion to dismiss into one for summary judgment. *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (consideration of "public records that were not subject to reasonable dispute because they were capable of

accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned" appropriate on motion to dismiss) (internal quotations omitted).

Here, because the Sunbiz Filing is publicly available on the Florida Department of State's website, at www.sunbiz.org, the Court may take judicial notice of such records. *See e.g. Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267, 1270 (S.D. Fla. Feb. 17, 2017) (taking judicial notice at dismissal stage of corporate records available on Florida Division of Corporations website); *see also Demeter v. Little Gasparilla Island & Fire Rescue, Inc.*, 2017 WL 662006, at *2 (M.D. Fla. Feb. 17, 2017) (taking judicial notice of party's Sunbiz profile at dismissal stage). Thus, at this stage the Court may judicially notice that Yacht Charter is a fictitious name for Defendant World Group.

The Court also notes that the Defendants do not dispute the authenticity or accuracy of the Sunbiz Filing. Further, the Defendants' argument that the registration of the fictitious name did not occur until after the Service Agreement was executed seemingly fails to refute whether contractual privity exists between the parties. Indeed, when the fictitious name was actually registered is not determinative of when Defendant World Group actually began using "Yacht Charter" as its fictitious name. Because Yacht Charter and Plaintiff are named parties to the Service Agreement, the Court agrees with the Plaintiff that Defendant World Group sits in contractual privity with Plaintiff American Marine. The Economic Loss Rule applies where "the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). Where the parties are in privity, "a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id.* at 537.

Here, after a review of the allegations related to the Defendants' negligence claim, it is clear that the alleged negligent conduct relates directly to the services performed under the Service Agreement. *See* ECF No. [41], at 8. Indeed, in the factual allegations provided, the Defendants directly reference the Service Agreement and attach a copy to their Counterclaim. ECF No. [41], at 6 ("On or about July 1, 2016, [American Marine] and non-party Yacht Charter Group entered an agreement for [American Marine] to perform certain work related to installing engines onboard the Vessel. "); *see also* Service Agreement, ECF No. [41-1]. In fact, each factual allegation asserted by Defendants supporting their counterclaims relates directly to the work performed or contemplated by the Service Agreement. *See generally* ECF No. [41], at 6-8.

As plead, Defendants' claim for negligence attempts to circumvent their contractual agreement by making a claim for economic loss in tort. Because the parties are in contractual privity, under maritime law, Defendants' negligence claim is barred by the Economic Loss Rule. Accordingly, Defendant's claim for negligence (Count I) is dismissed without prejudice. The Court will, however, grant the Defendants' request for leave to amend their Counterclaim to include a breach of contract claim.

### b. *Count III – Unjust Enrichment*

Next, Plaintiff argues that Defendants' claim for unjust enrichment must also be dismissed because Defendants' counterclaim alleges the existence of a written agreement between the parties covering the same transaction and subject matter in dispute. ECF No. [42], at 7. Plaintiff contends that there can be "no quasi-contract claim for unjust enrichment when there is an express contract between the parties concerning the same subject matter." *Id.* at 7-8. Defendants respond that they have not alleged a contract exists between the parties, but rather, that "an agreement existed between [American Marine] and non-party Yacht Charter." ECF No. [45], at 5. The Defendants

also claim that even if they alleged a contract existed between the parties, they are not prevented from pursuing a claim in the alternative. *Id.*

"The elements of a claim for unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Hercules, Inc. v. Pages,* 814 F.Supp. 79, 80 (M.D.Fla.1993) (citing *Henry M. Butler, Inc. v. Trizec Properties, Inc.* 524 So.2d 710, 712 (Fla. 2d DCA 1988)). "[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Gary v. D. Agustini & Asociados, S.A.,* 865 F.Supp. 818, 827 (S.D. Fla. 1994); *see also Webster v. Royal Caribbean Cruises, Ltd.,* 124 F.Supp.2d 1317, 1326 (S.D. Fla. 2000) (granting a motion to dismiss an unjust enrichment claim where the existence of a contract was undisputed, and the plaintiff did not allege that an adequate remedy at law did not exist).

As discussed above, to the extent the Defendants argue that they have not plead an agreement exists between the parties, the Court would reject such argument. While the Defendants argue that they have not alleged a contract exists between American Marine and World Group, there is no dispute between the parties that the Service Agreement was entered into between Plaintiff and Yacht Charter. ECF No. [45], at 5; *see also* ECF No. [41], at ¶ 4. Further, Defendants do not dispute that Yacht Charter is a fictitious name for Defendant World Group. Instead, Defendants argue that the Court should not consider the Sunbiz Filing at this stage. As discussed above, the Court may judicially notice public records and finds that the parties sit in contractual privity. *See infra.*

As for Defendants' argument that their unjust enrichment claim is plead in the alternative, the Court also finds this argument unavailing. A complaint cannot allege an express agreement in a claim for unjust enrichment. *JI-EE Indus. Co. v. Paragon Metals, Inc.*, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010). Here, Defendants' claim for unjust enrichment directly incorporates the factual allegation that an express agreement exists. ECF No. [41], at 6, 9. Thus, contrary to its assertions, Defendants' claim for unjust enrichment has not been plead in the alternative. If Defendants believe that Plaintiff has not adequately delivered on the obligations contemplated in the Service Agreement, they may seek contractual remedies. The Defendants' unjust enrichment claim, however, fails to acknowledge the existence of contractual remedies and also fails to allege that such remedies are inadequate. Accordingly, Defendants' claim for unjust enrichment must also be dismissed without prejudice. To the extent that the Defendants can amend the Counterclaim to properly plead their claim for unjust enrichment in the alternative, they are permitted to do so by the deadline imposed below.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, **ECF No. [42]**, is **GRANTED**. **COUNTS I** and **III** of Defendants' Counterclaim, **ECF No. [41]**, are **DISMISSED WITHOUT PREJUDICE**.

2. If so inclined, the Defendants are permitted to file an Amended Counterclaim *no later than October 18, 2019*.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on October 11, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record